UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

COALITION OF BLACK LEADERSHIP, et al.,    :
     Plaintiffs,    :
        :
     v.    :
        :
JOSEPH A. DOORLEY, et al.,    :
     Defendants.    :
        :     C.A. No. 71-4523JJM
        :
WILLIE K. WASHINGTON,    :
     Proposed Intervenor,    :
        :
     v.    :
        :
JORGE O. ELORZA, et al.,    :
     Defendants.    :

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

In 2022, with his post-conviction relief petition pending in the Superior Court, Proposed Intervenor Willie K. Washington submitted to the City of Providence a Civilian Complaint alleging irregularities and misconduct by officers of the Providence Police Department during the 2014 investigation that culminated in his 2015 criminal conviction.  In response, Mr. Washington was told by the investigating officer that a review of his Civilian Complaint and a conferral with the Rhode Island Attorney General's Office had resulted in the conclusion that the accused officers did not violate any Police Department procedures or rules.  He was further advised that he would not be afforded the informal hearing that is mandated by Providence's civilian complaint procedure because his allegations had been heard in his criminal case. Dissatisfied with this response, Mr. Washington now seeks to intervene pursuant to Fed. R. Civ. P. 24 in this fifty-two-year-old case so that he can pursue a motion to have Defendants adjudged

in contempt of the 1973 Consent Judgment that established Providence's civilian complaint

procedure.  He alleges a violation of the Consent Judgment's mandate that complainants alleging

police misconduct be afforded an informal hearing.

Pending before the Court are the following motions that Mr. Washington has filed *pro se*:[1]

- motion for Rule 22 interpleader (ECF No. 2), interpreted as a motion for Rule 24 intervention[2];

- motion for leave to proceed *in forma pauperis* (ECF No. 3);

- motion to adjudge in contempt (ECF No. 4);

- motion to appoint counsel (ECF No. 5); and

- motion to amend the contempt motion to strike three newly named Defendants and to add additional money damage claims, as well as claims for declaratory relief, against the remaining Defendants (ECF No. 10).

Mr. Washington's motion to adjudge in contempt, as supplemented by his motion to amend, sets

out the claim for which intervention is sought as required by Fed. R. Civ. P. 24(c).  Each of the

motions includes a secondary caption with Mr. Washington as "Interpleader" (interpreted as

"Proposed Intervenor") against a new set of proposed Defendants who for the most part are

current or recent holders of the offices held by the officials who were named and joined as

Defendants in the 1971 suit.

The Court ordered the City of Providence to respond to the motion to intervene.  It

complied, asking the Court to deny the motion pursuant to Fed. R. Civ. P. 24(a-b) as untimely

and prejudicial, as well as because Mr. Washington's interest in challenging the evidence

---

[1] Mr. Washington's filings have been interpreted with the leniency required for any *pro se* litigant.  De Barros v. From You Flowers, LLC, 566 F. Supp. 3d 149, 152 (D.R.I. 2021).

[2] Mr. Washington initially sought to interplead pursuant to Fed. R. Civ. P. 22.  ECF No. 2.  When his error was pointed out, he asked the Court to interpret his motion as seeking to intervene pursuant to Fed. R. Civ. P. 24.  ECF No. 11 at 2.  Mindful of his *pro se* status, I have done so.

supporting his criminal conviction differs significantly from the race-based police brutality that was the subject of the 1971 action and because Mr. Washington's claim and the 1971 action lack common questions of law and fact.  Relying on <u>Blue Chip Stamps v. Manor Drug Stores</u>, 421 U.S. 723, 750 (1975), Providence also invokes Fed. R. Civ. P. 12(b)(6),[3] arguing that Mr. Washington lacks standing to enforce a consent decree to which he is not a party.

The motions have been referred for determination and/or report and recommendation.[4]

## I.    <u>Background</u>

### A.    **Litigation Resolved by 1973 Consent Judgment**

Fifty-two years ago, an organization known as the "Coalition of Black Leadership," suing through its "President, Michael Van Leesten," together with six named individuals suing for themselves and those similarly situated, initiated this case against various officials of the City of Providence, including the mayor, the Commissioner of Public Safety, the police chief, the police Director of Personnel and a police officer.  Soon after, the "Providence Lodge #3, Fraternal Order of Police" intervened and was joined as an additional defendant.  ECF No. 1.

While none of the pleadings or other filings are now available,[5] the "transaction that is the subject of the action,"[6] Fed. R. Civ. P. 24(a)(2), has been described in various judicial

---

[3] The City's challenge to standing has been interpreted as implicating Fed. R. Civ. P. 12(b)(1), the procedural vehicle for examination of Article III standing.  <u>See</u> <u>Lyman v. Baker</u>, 954 F.3d 351, 360-62 (1st Cir. 2020).

[4] Whether a motion to intervene is dispositive or non-dispositive under 28 U.S.C. § 636(b)(1) depends on the circumstances.  <u>See</u> <u>UMB Bank, N.A. v. City of Cent. Falls</u>, C.A. No. 19-182WES, 2022 WL 17485809, at *1 n.1 (D.R.I. Dec. 7, 2022).  Because the City of Providence has relied on Fed. R. Civ. P. 12(b)(6)/(1) and because my conclusion that Mr. Washington lacks standing is dispositive, I have issued a report and recommendation.

[5] The original paper case file was transmitted to the National Archives at the close of the litigation; because of the age of the case, an electronic version of the case file does not exist.  Unfortunately, the Clerk's Office has been informed by the National Archives that the file cannot be located.  The only surviving document of record is the docket.  ECF No. 1.

[6] To discern the "subject of the action," I have relied on the available judicial decisions in this case and related cases that are cited in this report and recommendation.

decisions.  For example, in a decision issued several months before entering the Consent

Judgment, this Court noted that the "black citizens [of Providence] complain that they have been

subjected to a pattern and practice of improper and illegal police conduct, that is, to racism and

brutality."  Coalition of Black Leadership v. Doorley, 349 F. Supp. 127, 128 (D.R.I. 1972)

("Coalition I"); see Coalition of Black Leadership v. Cianci, 570 F.2d 12, 13 (1st Cir. 1978)

("Coalition II") (based on lawsuit brought "on behalf of the black residents of the city of

Providence," consent judgment entered to protect "the right of plaintiffs to be free from 'racially

discriminatory police conduct'"); The Rake v. Gorodetsky, 452 A.2d 1144, 1146 n.3 (R.I. 1982)

(describing this case as "a civil rights action alleging a practice or pattern of brutality on the part

of Providence policemen toward the black population").  When this Court revisited the issue in

1979, it described the case as addressing "a pattern or practice of brutality by the defendants,

various police officers and public officials . . . [and] establish[ing] certain procedures for the

filing, investigation, and resolution of civilian complaints against . . . police officers . . . designed

to protect the black population of this city."  Coalition of Black Leadership v. Cianci, 480 F.

Supp. 1340, 1341-42 (D.R.I. 1979) ("Coalition III").

    Following a trial, in 1973 the parties settled the case with a Consent Judgment[7] that

required the City of Providence Police Department ("PPD") immediately to adopt a specified

procedure for accepting, investigating, processing and resolving civilian complaints against PPD

officers, including that each complainant must have an informal hearing with a hearing officer.

ECF No. 4, Ex. D-2 (ECF No. 4-14 at 4).[8]  After the settlement, litigation continued regarding

---

[7] With the file lost, the only version of the Consent Judgment available to the Court is the unsigned and difficult-to-read document attached by Mr. Washington to his contempt motion (ECF No. 4) as Exhibit D-2 (ECF No. 4-14 at 4). Because counsel for the City of Providence has not disputed that Exhibit D-2 accurately reflects the terms of the Consent Judgment that the City continues to comply with, the Court accepts it as authentic.

[8] There is confusion regarding the alphabetic designations that Mr. Washington used for his exhibits in that his filing does not distinguish whether an exhibit links to the contempt motion or to the Civilian Complaint that itself is an

whether the Consent Judgment would be modified.  As reflected in the resulting decisions, attempts to modify the Consent Judgment were rejected.  <u>Coalition II</u>, 570 F.2d at 13-17; <u>Coalition III</u>, 480 F. Supp. at 1340-45.  The Consent Judgment remains in full force and effect. The last activity reflected in the docket was in mid-March 1980, forty-three years ago.  Mr. Washington and counsel for the City of Providence agree that the original parties are now deceased or unavailable.  ECF Nos. 7-1 at 2; 11 at 3.  It does not appear that a class was ever certified.[9]

### B.    Compliance with 1973 Consent Judgment

Since 1973, the City of Providence and the PPD have complied with the Consent Judgment in that they adopted and have since maintained policies that comply with its terms.  As of the present, the PPD maintains General Order 130.01, which lays out a civilian complaint procedure that complies with the Consent Judgment, in that it establishes a process for the filing of civilian complaints of police misconduct with the PPD Office of Professional Responsibility ("OPR") and specifies that "[a]ll civilian complaint hearings will be held in accordance with the Consent Agreement."  ECF No. 4, Ex. E-2 (ECF No. 4-14 at 15).  The PPD website confirms that "[t]he civilian complaint process was initiated by the mandate of a Federal Consent Decree in

exhibit to the contempt motion.  Where there are two iterations of the same alphabet notation (as here, in that there are two exhibits designated as "D"), I have arbitrarily labeled the second as "2," with the ECF filing number serving as the more precise designator.

[9] The docket does not indicate that a motion for class certification was ever filed or that the Court ever certified a class pursuant to Fed. R. Civ. P. 23.  Apart from the caption (which states that the individual plaintiffs are suing "on behalf of themselves and those similarly situated"), the unsigned Consent Judgment refers to "Plaintiffs," mentions that the Consent Judgment was approved "pursuant to Rule 23(e)," but makes no reference to any class, putative or certified.  Subsequent decisions refer to the case as a "class action suit" without specifying whether the putative class was ever certified.  <u>E.g.</u>, <u>Coalition II</u>, 570 F.2d at 13 ("class action suit was filed in the district court of Rhode Island on behalf of the black residents of the city of Providence"); <u>Providence Lodge No. 3, Fraternal Ord. of Police v. Providence External Rev. Auth.</u>, 951 A.2d 497, 505 (R.I. 2008) ("class action suit . . . filed in the district court of Rhode Island") (internal quotation marks omitted).  With no indication that a class was ever certified, the Court assumes that a putative class of the "black residents of the city of Providence" was alleged, but that there is no certified class.

1973."[10]  By Ordinance adopted in 2002, the City of Providence added a second layer of

compliance with the spirit of the Consent Judgment by creating a body independent of PPD – the

Providence External Review Authority ("PERA") – that is authorized to receive and process

civilian complaints of police misconduct.  Prov. Code of Ordinances § 18 ½-2.  PERA's link to

the Consent Judgment was confirmed by the Rhode Island Supreme Court.  See Providence

Lodge No. 3, Fraternal Ord. of Police, 951 A.2d at 500 ("In 2002, the PERA Ordinance was

enacted by the Providence City Council to provide a system of civilian oversight with respect to

the Providence Police Department.  The city council did not write on a clean slate, however,

because in 1973 . . . a civil rights action that was tried to completion in federal court culminated

in a consent judgment (consent decree) that is still in force to this day.").

    Mr. Washington does not allege that the City of Providence and PPD failed to comply

with the Consent Judgment's requirement that a specific civilian complaint procedure must be

adopted; to the contrary, he represents that he agrees "hole heartily [sic] with the foundational

structure of the civilian complaint system and internal affairs procedures" and "doesn't want to

reopen the proceedings to disregard the consent decree, but to enforce the document [sic] core

principles, which all parties already agree upon and Mr. Washington agree [sic] with."  ECF No.

11 at 5.

### C.    2014 Criminal Investigation and 2015 Conviction

    Mr. Washington's interest as reflected in his Civilian Complaint focuses on the 2014

police investigation that resulted in his 2015 conviction, which he alleges is tainted by the

admission of evidence that was fabricated and falsified by the investigating PPD officers.  In

---

[10] Providence Police | Civilian Complaint, https://www.providenceri.gov/police/providence-police-civilian-complaint/#:~:text=Complaints%20may%20be%20filed%20in,Washington%20St%2C%20Providence%2C%20RI%2002903.

2014, Mr. Washington was a resident of Smithfield, Rhode Island, when he was identified by the PPD as a suspect in connection with a shooting in Providence in the early morning of November 15, 2014.  ECF No. 4, Ex. B-2 (ECF No. 4-2 at 6).  Mr. Washington's identification as a suspect was derived soon after the shooting from eyewitnesses who provided investigating PPD officers with several versions of a license plate and a specific description of the vehicle whose passenger did the shooting.  Id.; see also ECF No. 4 Exs. D (ECF No. 4-5 at 2); E (ECF No. 4-6 at 3); F (ECF No. 4-7 at 2-4).  One of the versions of the license plate returned to a vehicle matching the eyewitness description; it was registered to Mr. Washington at his Smithfield residence.  ECF No. 4, Exs. D (ECF No. 4-5 at 2); E (ECF No. 4-6 at 3).

Over Mr. Washington's objection, following a suppression hearing, the trial justice admitted evidence related to his identification as the shooter.  State v. Washington, 189 A.3d 43, 50, 61 (R.I. 2018).  At trial, Mr. Washington was convicted by a jury and was sentenced by the Superior Court to a total of sixty years to serve, with twenty years nonparolable.  Id. at 46.  After the verdict, Mr. Washington's case was remanded back to the Superior Court for a hearing on his Brady motion, which challenged some of the identification evidence.  Id. at 46, 50-51. Following a full hearing held on June 19, 2017, the Brady motion was denied.  Id. at 51-54.  The Superior Court found no Brady violations, as well as that, "[t]he other evidence produced at Washington's trial was simply too powerful to overcome."  State v. Washington, No. P2/15-1538 AG, 2017 WL 3159034, at *11 (R.I. Super. Ct. July 19, 2017), aff'd, 189 A.3d 43 (R.I. 2018). On direct appeal, Mr. Washington's conviction was affirmed.  Washington, 189 A.3d at 66.

As a result of an interview conducted in connection with the 2017 Brady hearing, Mr. Washington became aware that PPD logs revealed certain "discrepancies" in that a PPD officer (Officer Richards), who testified at the criminal trial, had called in three versions of the license

plate number provided by eyewitnesses, yet Officer Richards was not "dispatched" until minutes after they were broadcast. ECF No. 4, Ex. C-2 (ECF No. 4-4 at 3). Mr. Washington made a public records request for these logs. ECF No. 4, Ex. C-2 (ECF No. 4-4 at 3); ECF No. 4, Ex. H (ECF No. 4-9). The response he received, dated September 10, 2020, included copies of the logs that establish these "discrepancies." ECF No. 4, Ex. H (ECF No. 4-9).

Mr. Washington is now pressing a post-conviction relief petition ("PCR Petition") filed on September 17, 2018. ECF No. 4, Ex. A (ECF No. 4-1 at 2), referencing Washington v. Coyne, PM-2018-7704 (R.I. Super Ct. Sept. 17, 2018). Publicly available filings in the PCR proceeding reveal that, on June 29, 2022, Mr. Washington advised the Superior Court of his desire to have a hearing on his claim that PPD "officers have fabricated evidence and testified wrongly." Washington, PM-2018-7704 (R.I. Super Ct. Nov. 14, 2022), Motion to Adjudge in Contempt, Ex. A at 4. The trial justice offered Mr. Washington a prompt hearing as soon as his attorney filed a motion asserting such an argument. Id. at 7, 9. As of this writing, the PCR Petition remains pending in the Superior Court.

### D.    Mr. Washington's 2022 Civilian Complaint

In August 2022, Mr. Washington filed his Civilian Complaint[11] with the PPD OPR. ECF No. 4, Ex. C-2 (ECF No. 4-4). The Civilian Complaint alleges that PPD officers who participated in the investigation of the November 15, 2014, shooting failed to conform their arrest reports and narratives to requirements in various PPD policies (for example, requiring approval by an authorized supervisor). Id. The Complaint contends that these failures mean that

---

[11] The document that Mr. Washington presents as his Civilian Complaint has two parts: the first part is a numbered list of assertions labelled as "Attachment 1 out of 2, Attachments: False Reports," while the second is captioned as a memorandum in support of his PCR Petition. ECF No. 4, Ex. C-2 (ECF No. 4-4 at 6). Both parts reference exhibits that are attached.

the reports and narratives lacked "legal sufficiency" and that prosecutorial reliance on them

amounted to the introduction of "false/fabricated evidence."  ECF No. 4, Ex. C-2 (ECF No. 4-4

at 6-10).  Mr. Washington's Civilian Complaint also focuses on the "discrepancies" he learned of

from the pre-<u>Brady</u> hearing interview.  <u>Id.</u> (ECF No. 4-4 at 2-3).  Alleging that PPD logs

establish that Officer Richards could not have asked the dispatcher to inquire about the license

plate because he had not yet been dispatched and arguing that "[w]hen there is [sic] too many

factual discrepancies, they are better known as lies," Mr. Washington's Civilian Complaint

asserts that his license plate number must have been "fabricated . . . on the order of the lead

det[ective]."  ECF No. 4, Ex. C-2 (ECF No. 4-4 at 3-4).  The Civilian Complaint also asserts that

Officer Richards' statement that he "responded" to "a report of shots fired" and his testimony

that he asked the dispatcher to run three versions of the license plate provided by eyewitnesses

must have been "falsified."  ECF No. 4, Ex. C-2 (ECF No. 4-4 at 2-3).

       To respond to Mr. Washington's Civilian Complaint, on October 13, 2022, a PPD OPR

investigating officer wrote:

> I have thoroughly reviewed the allegations of misconduct and incidents cited in
> your complaint.  After an extensive review of the materials you provided and
> conferring with the Attorney General's Office, I have concluded that the Officers
> involved in this case did not violate any Policies and Procedures or Rules and
> Regulations of the Providence Police Department.

ECF No. 4, Ex. B (ECF No. 4-2 at 2) ("PPD Response Letter").  No hearing officer was assigned

to Mr. Washington's Civilian Complaint and no informal hearing was scheduled, which is

required by the Consent Judgment, as referenced in PPD General Order 130.01.  Dissatisfied, on

October 13, 2022, Mr. Washington wrote to the "Officers of the Commission of Public Safety"

of the City of Providence regarding the PPD Response Letter.  ECF No. 4, Ex. A (ECF No. 4-1).

In his letter, Mr. Washington asserts that the PPD Response Letter fails to comply with the

Consent Judgment because he did not get an informal hearing with a hearing officer empowered to make a finding of guilty/not guilty.  Id.  Mr. Washington represents that the PPD OPR investigator further advised him that an informal hearing was not scheduled because the same claims of police misconduct had already been heard and adjudicated during his criminal case.  Id. Mr. Washington claims that this is untrue in that not all of his claims have been raised in his criminal case because some are being asserted for the first time in connection with his PCR Petition, which remains pending.  Id.

Nothing in Mr. Washington's Civilian Complaint alleges or even suggests that he was the victim of or was seeking to expose racially-animated police brutality.  It contains no reference to race and does not allege that any of the alleged misconduct was racially motivated.

### E.    Mr. Washington's Contempt Motion

Mr. Washington has focused on Providence's failure to schedule an informal hearing to address his Civilian Complaint in these unique circumstances where the allegations of misconduct during a police investigation remain in issue in the complainant's ongoing criminal case.  As his Reply explains, "Mr. Washington base [sic] his intervention on . . . technical reasons being a violation to what both parties already agreed upon in a contractual consent decree."  ECF No. 11 at 5 (emphasis supplied).  To remedy this "technical" violation, Mr. Washington asks the Court to allow him to intervene, either as of right or permissively; to hold a contempt hearing; to find that Defendants are in contempt of the Consent Judgment; and to award him equitable sanctions of $1 million.  ECF Nos. 2; 4.  In his motion to amend, Mr. Washington seeks to add more money damage claims (totaling another $1.5 million in punitive and "liability" damages), as well as "[m]unicipal liability" damages of $1 million from the City of Providence and the Providence Lodge #3, Fraternal Order of Police.  ECF No. 10.  The motion to amend also asks

for $5,000 per day and for a declaration that the failure to afford him an informal hearing not only violated the Consent Judgment but also transgressed constitutional and other legal rights of "class members." Id. at 3.  Mr. Washington does not ask for an injunctive remedy.

F.      **Mr. Washington's Membership in Putative Class**

Mr. Washington's filings do not mention either his race or his community of residence. This information may be derived from one of his exhibits, the 2014 PPD Incident Report, which indicates that Mr. Washington is "Black" and a resident of Smithfield, Rhode Island.  ECF No. 4, B-2 (ECF No. 4-2 at 5).  Thus, Mr. Washington is not a member of the putative class alleged in this case, whether or not it was certified, because he was not a "black resident[] of the City of Providence" in 2014 at the time of the police conduct he seeks to challenge.  Coalition III, 480 F. Supp. at 1341 (case was "filed on behalf of the black residents of the City of Providence").

II.      **Applicable Law and Analysis**

A.      **Standing**

Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit."  Warth v. Seldin, 422 U.S. 490, 498 (1975); see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-63 (1992).  As applied in the context of a motion to intervene, whether permissive or as of right, in a case like this one where the original parties are not available and are not engaged in ongoing litigation, the "intervenor . . . must have Article III standing in order to continue litigating."  Mangual v. Rotger-Sabat, 317 F.3d 45, 61 (1st Cir. 2003); Ricci v. Okin, 770 F. Supp. 2d 438, 444 (D. Mass. 2011).  The standing inquiry requires the Court to focus (1) on whether the proposed intervenor is a party or class member; and (2) on whether the consent decree expressly confers standing on him to enforce the provision in issue through a contempt motion.  See Justice v. Sununu, Case No. 20-cv-517-PB, 2022 WL

18275895, at *8 (D.N.H. Dec. 2, 2022) (standing denied both because proposed intervenor was neither party nor class member, as well as because settlement agreement created exclusive enforcement mechanism, which did not include private suit by class members), approved sub nom. Justice v. Governor, NH, 2023 WL 171364 (D.N.H. Jan. 12, 2023).  Because it is the "threshold question," Warth, 422 U.S. at 498, I begin the analysis by focusing on Mr. Washington's Article III standing.

At first blush, it appears clear that the Court's analysis can stop at the first step – Mr. Washington does not have standing in light of the principle established by the Supreme Court of the United States that a consent decree like the Consent Judgment in this case "is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it."  Blue Chip, 421 U.S. at 750; see Reynolds v. Butts, 312 F.3d 1247, 1248-50 (11th Cir. 2002) (per curiam) (non-party "unnamed, non-intervening members of a class" lack standing to seek contempt for violation of consent decree, citing Blue Chip).  Mr. Washington is not a party to the case nor is he a party to the Consent Judgment nor is he a member of a certified or even the putative class.  Therefore, the plain language of Blue Chip means that he "ha[s] no standing to enforce the consent decree."  Reynolds, 312 F.3d at 1249; see Justice, 2022 WL 18275895, at *8 (plaintiff who is not a party or member of class at time of consent decree lacks standing to enforce it, citing Blue Chip); Reyes-Muñoz v. P.R. Aqueduct & Sewer Auth, Civ. No.: 19-2131 (SCC), 2021 WL 3684134, at *7 (D.P.R. Aug. 19, 2021) ("general principle remains 'that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it,'" quoting Blue Chip); Ricci, 770 F. Supp. 2d at 444-45 (in absence of express language

conferring right of non-party to enforce consent decree in court, union lacks standing to intervene to seek order of enforcement, citing Blue Chip).

The seeming clarity of Blue Chip has been muddied by a line of decisions from other circuits beginning with the Ninth Circuit's decision in Hook v. Ariz., Dep't of Corr., 972 F.2d 1012, 1015 (9th Cir. 1992). Hook distinguishes Blue Chip as applicable only when the plaintiff is a governmental entity. Id. at 1015. In reliance on the settled principle that consent decrees have elements of both contracts and judicial decrees, these cases permit non-party standing as long as the second prerequisite to standing is established – that is, a non-party has standing to challenge noncompliance with a consent decree if the decree expressly provides that the non-party is "an *intended* third-party" beneficiary. United States v. FMC Corp., 531 F.3d 813, 820-21 (9th Cir. 2008) (emphasis in original) (citing Hook). This interpretation of Blue Chip has been adopted in the District of Columbia, Second, Eighth and Tenth Circuits. Floyd v. Ortiz, 300 F.3d 1223, 1226 (10th Cir. 2002) (intended third-party beneficiaries have standing to enforce consent decrees); Pure Cnty., Inc. v. Sigma Chi Fraternity, 312 F.3d 952, 958 (8th Cir. 2002) (to enforce consent decree, third party must show parties intended to confer benefit and enforceable right to benefit); Beckett v. Airline Pilots Ass'n, 995 F.2d 280, 286 (D.C. Cir. 1993) (intended third party beneficiaries of a consent decree have standing to enforce decree); Berger v. Heckler, 771 F.2d 1556, 1565 (2d Cir. 1985) (Blue Chip "was not intended to preclude nonparties from intervening to enforce a consent decree"). It has been rejected by the Sixth Circuit. Aiken v. City of Memphis, 37 F.3d 1155, 1168 (6th Cir. 1994) (en banc) ("The plain language of Blue Chip indicates that even *intended* third-party beneficiaries of a consent decree lack standing to enforce its terms.") (emphasis in original). The Eleventh Circuit has applied Blue Chip without addressing Hook. Reynolds, 312 F.3d at 1249 ("As non-parties, the appellants have no standing

to enforce the consent decree," citing <u>Blue Chip</u>).  The First Circuit has yet to squarely address the issue.  <u>Ricci</u>, 770 F. Supp. 2d at 444 n.32 (contrasting "plain language of <u>Blue Chip</u>" with Ninth Circuit holding in <u>Hook</u>).

Mindful of <u>Hook</u> and progeny, despite Mr. Washington's non-party status, I have continued the analysis to examine whether he has established that he is an intended beneficiary. To make this determination, the Court must look to the language agreed to by the parties.  Thus, if a consent decree does not include a provision that clearly creates a legally enforceable right vested in the proposed intervenor to seek the remedy of contempt for specific alleged non-compliance, the proposed intervention should be rejected based on lack of standing.  <u>Parton v. White</u>, No. 2:81-cv-19-DDN, 2022 WL 3646161, at *2 (E.D. Mo. Aug. 24, 2022); <u>see, e.g.,</u> <u>Police Assoc. of New Orleans v. City of New Orleans</u>, 616 F. Supp. 3d 549, 557 (E.D. La. 2022) (non-parties do not have standing to enforce consent decrees unless a "provision of the consent decree . . . grants a non-party . . . standing to enforce its provisions") (internal quotation marks omitted); <u>Nixon v. Hegar</u>, Civil Action No. 3:21-CV-0976-D, 2021 WL 4197207, at *2 (N.D. Tex. Sept. 15, 2021) (claimant lacks standing where no provision of consent judgment grants non-parties standing to enforce its provisions), <u>appeal dismissed</u>, No. 21-10990, 2022 WL 19333635 (5th Cir. Oct. 24, 2022).

Applying these principles to Mr. Washington's circumstances, I find that it is clear that Mr. Washington lacks standing not just because he is not a party or a class member, but also because he is not an "intended third party beneficiary" on whom the Consent Judgment expressly confers a legally enforceable right to bring a motion for contempt to enforce its terms.  As its provisions make plain, the sole implementation mechanism created by the Consent Judgment is the directive that the PPD must promptly "adopt[]" and take all necessary actions to "implement

the terms," including to file the new regulations and orders with the Court.  ECF No. 4, Ex. D ¶ 3

(ECF No. 4-14).  There is no dispute that the City of Providence and the PPD complied with this

implementation provision.  Once implementation was completed, the Consent Judgment's

implementation requirements were satisfied.  The Consent Judgment does not contain a

provision creating an ongoing right vested in complainants who are dissatisfied with PPD's

"technical" compliance in processing a specific civilian complaint to bring a contempt motion.

With no provision or language in the Consent Judgment indicating that the parties intended to

confer such a right, Mr. Washington lacks standing to intervene to assert it.  See Ricci, 770 F.

Supp. 2d at 445.

      In short, Mr. Washington is not a party, is neither a member of a certified class nor a

putative member of an alleged class; further, the language of the Consent Judgment specifies

how it was to be implemented and lacks any provision conferring on Mr. Washington the status

of intended beneficiary with the right to seek enforcement through contempt.  Accordingly, Mr.

Washington lacks Article III standing either to intervene or to press his contempt motion, his

motion to intervene should be denied and his remaining motions, including his motion for

contempt, should be denied as moot.  I recommend that Mr. Washington's claim be dismissed for

lack of standing pursuant to Fed. R. Civ. P. 12(b)(1).  See Cottone v. City of Bos., Civil Action

No. 1:22-CV-10285-AK, 2023 WL 168728, at *2 (D. Mass. Jan. 11, 2023).

      **B.**    **Intervention**

          1.    Intervention as of Right – Interest in Subject Matter of the Action

      If the Court assumes that Mr. Washington has standing, his motion to intervene as of right

should nevertheless be denied because he lacks the interest in the subject matter of the action

required for Fed. R. Civ. P. 24(a) intervention.  Under Fed. R. Civ. P. 24(a), if an intervention

application is timely,[12] a court must permit a moving party to intervene by right where he can establish each of certain interest-related factors: (1) a demonstrated interest relating to the transaction that is the subject of the action; (2) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; and (3) a satisfactory showing that existing parties inadequately represent its interest. Conservation Law Found. v. Mosbacher, 966 F.2d 39, 41 (1st Cir. 1992).  The Court must consider the motion for intervention "with an eye toward the commonsense view of the overall litigation."  Ungar v. Arafat, 634 F.3d 46, 51 (1st Cir. 2011) (internal quotation marks omitted).

Application of the interest requirement requires the Court to examine Mr. Washington's interest in relation to the "transaction" that was the subject of the underlying action. Conservation Law Found., 966 F.2d at 41.  As clarified by this Court (and specifically by United States District Judge Raymond Pettine who presided over the case that ended with entry of the Consent Judgment following a trial), the subject of this action was "racism and brutality," "racially discriminatory police conduct" impacting "black residents of the City of Providence" and the need to create a mechanism to expose such racially animated police misconduct through a robust civilian complaint process.  See Coalition II, 570 F.2d at 13; Coalition I, 349 F. Supp. at 128; Coalition III, 480 F. Supp. at 1341.  Mr. Washington's interest bears no relation to such "transaction[s]."[13]  Far from implicating racist police brutality or the need for a civilian complaint process to deter it, Mr. Washington's Civilian Complaint asserts his interest

---

[12] The untimeliness of Mr. Washington's intervention motion is discussed *infra*.

[13] In response to the opposition to intervention of the City of Providence, Mr. Washington makes the conclusory argument that "the claims I assert today are the same claims the Rhode Island minorities were asserting back in the 70s that a few rouge [sic] officers are committing police misconduct."  ECF No. 11 at 3.  However, nothing that he has presented in support of his contempt motion reflects that this is the interest he is asserting.  I have not credited this argument.

(apparently in aid of his PCR Petition) in challenging the admissibility of the allegedly "false/fabricated evidence," ECF No. 4 Ex. C-2 (ECF No. 4-4 at 7), which was presented during his criminal trial.  There is nothing in this record permitting the inference that Mr. Washington's interest arises from "racism and brutality" or "racially discriminatory police conduct."

There is no need to go further.  Mr. Washington's desire for an informal hearing regarding police misconduct is based on an interest that is materially different from and has no relation to the "transaction" on which the Consent Judgment was based.  Nor is anything going to happen in this settled and long-quiescent case that might impair Mr. Washington's ability to protect his interest by challenging this evidence via the PCR Petition.  Therefore, Mr. Washington has failed to establish an "interest relating to the . . . transaction which is the subject of the action" nor has he made any showing that the "[d]isposition of [this] action may . . . impair or impede [his] ability to protect the interest."  Conservation Law Found., 966 F.2d at 41.  Accordingly, I recommend that Mr. Washington's motion to intervene as of right pursuant to Fed. R. Civ. P. 24(a) be denied.[14]

2.    Permissive Intervention – Common Question of Law or Fact

When a movant is not entitled to intervention as of right, the court may, on timely motion, allow permissive intervention so long as the movant has "a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  Permissive intervention is committed to the "very broad discretion" of the court, which must consider the

---

[14] For the same reasons, Mr. Washington's motion does not implicate Fed. R. Civ. P. 71, which provides that the procedure for a "nonparty" to enforce an order in a circumstance where the "order grants relief for [the] nonparty." Fed. R. Civ. P. 71.  The Consent Judgment does not "grant[] relief" for Mr. Washington nor does his interest in police investigative methods in his case align with the racially-motivated police brutality in interest in this case. Moore v. Tangipahoa Par. Sch. Bd., 625 F.2d 33, 35 (5th Cir. 1980) (per curiam) (Rule 71 intervention properly denied because asserted interest in freedom from politically-inspired employment decisions in no way implicates interest in racially-neutral, school system that is in issue in case).

prejudice that intervention would inflict on the original parties.  Allco Renewable Energy Ltd. v. Haaland, Case No. 1:21-cv-11171-IT, 2022 WL 18033002, at *2 (D. Mass. Jan. 7, 2022).

Permissive intervention should be denied both based on the City of Providence's compelling argument that it will be seriously prejudiced if the Court were to reopen a case that has been settled and dormant for more than forty years and on Mr. Washington's failure to raise a claim that shares with the main action "a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  This case implicated the facts in Providence fifty-plus years ago relating to racist police brutality and the applicable law supporting the need for a speedy mechanism for civilian residents of the City harmed by such racist police brutality to expose it, as well as for PPD officers engaged in racist brutality to be held accountable.  Mr. Washington's Civilian Complaint implicates the facts and law applicable to whether an informal hearing is required for a civilian complaint made by an incarcerated individual alleging improper police investigative methods, including the falsification of evidence, which allegations have been (or could have been) and, in the future, could be the subject of hearings in his still ongoing state court criminal case.

I recommend that the Court exercise its discretion to deny Mr. Washington's motion for permissive intervention.

### 3.    Timeliness of Intervention

Whether as of right or permissive, "when intervention is at issue, timeliness is the 'prevenient question.'"  R & G Mortg. Corp. v. Fed. Home Loan Mortg. Corp., 584 F.3d 1, 7 (1st Cir. 2009) (quoting Banco Popular de P.R. v. Greenblatt, 964 F.2d 1227, 1230 (1st Cir. 1992)) (explaining that "timeliness stands as a sentinel at the gates whenever intervention is requested and opposed").  Timeliness is "inherently fact-sensitive and depends on the totality of the circumstances."  Id.  Four factors inform the timeliness inquiry:

(i) the length of time that the putative intervenor knew or reasonably should have known that his interests were at risk before he moved to intervene; (ii) the prejudice to existing parties should intervention be allowed; (iii) the prejudice to the putative intervenor should intervention be denied; and (iv) any special circumstances militating for or against intervention.

Id.  In evaluating this "mosaic, the status of the litigation at the time of the request for intervention is highly relevant;" if the case has progressed "toward its ultimate conclusion, the scrutiny attached to a request for intervention necessarily intensifies."  Id. (internal quotation marks omitted).

Mindful of these principles and particularly the need to be guided by the "totality of the circumstances," I find that the Court's timeliness inquiry should focus not on the relatively short period between the PPD Response Letter (October 13, 2022), and the filing of the motion to intervene (November 15, 2022), but rather on the delay between the 2014 police conduct in issue and the 2022 filing of the Civilian Complaint, as well as on the reality that the underlying case has been settled for fifty years and quiescent for forty-three.  Viewed through this lens, Mr. Washington's intervention motion stumbles badly on the Fed. R. Civ. P. 24 requirement of timeliness.

The best face on when Mr. Washington knew or reasonably should have known of his "interests" may be derived from his contempt motion, which alleges that the disclosure that triggered his awareness of the "discrepancies" came from a May 1, 2017, interview transcript; his attachments to the contempt motion reveal that, on September 10, 2020, he received the documents that he alleges confirm his "discrepancies" theory of police misconduct.  ECF No. 4, Ex. C-2 (ECF No. 4-4 at 3); Ex. H (ECF No. 4-9).  Viewed from this perspective, Mr. Washington delayed almost two years to file the Civilian Complaint that is the foundation for his motion to intervene.  More significantly, most or all of Mr. Washington's discontent with the

investigative work of the PPD officers during the 2014 investigation was knowable and could have been raised by a civilian complaint filed in 2014 or 2015.  Yet Mr. Washington delayed in filing his Civilian Complaint until 2022.

Fatal to Mr. Washington's ability to meet the timeliness requirement is the age and status of this case, which has been fully settled for fifty years and quiescent for forty-three years.  See Garrity v. Gallen, 697 F.2d 452, 455-56 (1st Cir. 1983) (affirming denial of motion to intervene filed two months after consent decree approved by court order).  Consideration of this fact must be coupled with the serious, indeed "frankly beyond comprehension," prejudice to Defendants, as articulated by the City of Providence.  ECF No. 7-1 at 5.  As Providence contends, this Consent Judgment has been the backbone of the PPD's civilian complaint system and internal affairs unit for almost five decades.  To open up this case now, with an entirely new set of parties, would not only trigger expensive litigation but also would potentially threaten the *status quo* created by a carefully crafted settlement that has protected residents of the City of Providence for fifty years.

Thus, while the motion to intervene was filed soon after Mr. Washington received the PPD Response Letter, the overall circumstances – the "mosaic" – is woefully insufficient to satisfy the timeliness requirement that is a predicate to any Fed. R. Civ. P. 24 intervention.  R & G Mortg. Corp., 584 F.3d at 7.  Based on the foregoing, whether intervention is analyzed as of right or permissively, I find that Mr. Washington's motion to intervene is untimely.  Therefore, it should be denied.

### III.   Conclusion

Based on the foregoing analysis, I recommend that Mr. Washington's motion to intervene (ECF No. 2) should be denied because he lacks standing to pursue intervention or contempt,

because the attempted intervention is untimely and prejudicial to the City of Providence, and because he has failed to establish either that he has a demonstrated interest in the transactions that were the subject matter of this case and/or that he is raising claims that share with the main action common questions of law and fact.  If the Court adopts this recommendation, all of Mr. Washington's other motions (ECF Nos. 3, 4, 5 and 10) should be denied as moot.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
June 6, 2023